UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

KEVIN LAFLEUR                              CIVIL ACTION NO. 6:15-cv-02731

VERSUS                                    JUDGE TRIMBLE

U.S. COMMISSIONER,                        MAGISTRATE JUDGE HANNA
SOCIAL SECURITY
ADMINISTRATION

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable

law, it is recommended that the Commissioner's decision be affirmed.

### ADMINISTRATIVE PROCEEDINGS

The claimant, Kevin Lafleur, fully exhausted his administrative remedies

before filing this action in federal court.  On March 28, 2011, the claimant filed

applications for disability insurance benefits ("DIB") and for Supplemental Security

Income ("SSI"), alleging disability beginning on March 28, 2011.[1]  His applications

were denied, and he requested a hearing, which was held on June 27, 2012 before

Administrative Law Judge Rowena Deloach.[2]   The ALJ issued a decision on

---

[1]      The applications are not in the record, but they are referenced in an ALJ's decision.
(Rec. Doc. 14-1 at 100).

[2]      The hearing transcript is found at Rec. Doc. 14-1 at 45-82.

September 20, 2012,[3] concluding that the claimant was not disabled within the meaning of the Social Security Act from March 28, 2011 through the date of the decision.  The claimant did not seek judicial review of the decision.[4]

Instead, on February 22, 2013, the claimant filed new applications for DIB and SSI,[5] this time alleging that he had been disabled since September 21, 2012, the day after the prior hearing.[6]  Both applications were again denied.[7]  The claimant again requested a hearing, and a second hearing was held on April 16, 2014 before Administrative Law Judge Michael Wahlder.[8]  The ALJ issued a decision on August 27, 2014,[9] concluding that the claimant was not disabled from September 21, 2012 through the date of the decision.  The claimant asked for review of the decision,[10] but the Appeals Council concluded that no basis existed for review of the ALJ's

---

[3]        Rec. Doc. 14-1 at 100-109.

[4]        Rec. Doc. 19 at 3.

[5]        Rec. Doc. 14-1 at 159, 165.

[6]        In his briefing, the claimant contends that this was the result of an administrative error and that his disability onset date did not change.  (Rec. Doc. 19 at 3-4).

[7]        Rec. Doc. 14-1 at 95, 96.

[8]        The hearing transcript is found at Rec. Doc. 14-1 at 27-44.

[9]        Rec. Doc. 14-1 at 15-22.

[10]       Rec. Doc. 14-1 at 10.

decision.[11]   Therefore, the ALJ's second decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g). The claimant then filed this action seeking review of the Commissioner's decision.

## SUMMARY OF PERTINENT FACTS

The claimant was born on December 18, 1978.[12]  At the time of the first ALJ decision, he was 33 years old, and at the time of the second ALJ decision he was 36 years old.  He obtained a high school equivalency diploma,[13] obtained vocational training in welding,[14] and has relevant work experience as a welder, as a truck loader at a retail distribution center, and as a switchman and sandblaster for the railroad.[15] He alleges that he has been disabled since March 28, 2011 due to hearing loss, insomnia, breathing problems, lung disease, emphysema, restrictive lung disease, and reactive airway disease.[16]

The claimant contends that his health problems began when he was exposed to chemicals while welding a crane that had come from offshore and had not been

---

[11]      Rec. Doc. 14-1 at 5.

[12]      Rec. Doc. 14-1 at 83.

[13]      Rec. Doc. 14-1 at 30, 50.

[14]      Rec. Doc. 14-1 at 51.

[15]      Rec. Doc. 14-1 at 30, 53-56, 74-75, 190, 243-244.

[16]      Rec. Doc. 14-1 at 30, 83, 192.

properly cleaned before the welding began.[17]  On June 12, 2012,[18] the claimant saw Dr. Gehrig L. Harris in Ville Platte, Louisiana.  He complained of shortness of breath with minimal activity and gave a history of having used Albuterol and Flovent inhalers that did not relieve his symptoms.  Upon examination, the doctor found normal breath sounds, no wheezes, no rhonchi, normal chest expansion, no rales, and a normal oxygen saturation level.  However, the doctor noted marked anxiety.  Dr. Harris also noted that the duration of the claimant's symptoms qualified him for a chronic obstructive pulmonary disease ("COPD") diagnosis.  His plan was to control the claimant's coughing with medications for inflammation and follow up in thirty days.  His assessments were bronchitis and pneumonitis due to fumes and vapors, extrinsic asthma, COPD, and hypertension.   He prescribed Albuterol Sulfate, Prednisone, and a Spiriva inhaler.

The claimant returned to Dr. Harris on June 14, 2012,[19] complaining that his breathing had not improved despite the new medications.  The doctor added Albuterol Sulfate to be administered via nebulizer in addition to the pills previously prescribed, and he noted that the claimant "has a serious pulmonary problem."

---

[17]     Rec. Doc. 15 at 1, 34.

[18]     Rec. Doc. 14-1 at 215-216.

[19]     Rec. Doc. 14-1 at 217.

On June 27, 2012, the claimant testified at the first hearing regarding his symptoms, his activities, and his medical treatment.

The claimant saw Dr. Harris again on February 12, 2013.[20]  He complained of cough, asthma, shortness of breath, and bronchitis.  Dr. Harris noted that he had not seen the claimant "very frequently related to financial problems.  He has not been able to work because of lung problems and frequent violent coughing.  He has had this coughing for several months now and it is trigged [sic] by any strong smells including the cleaners that my nurses use in this office.  He was consequently examined on the front porch of this office because he could not come in without coughing."  Upon examination, the doctor found normal breath sounds, no wheezes, no rhonchi, normal chest expansion, and no rales.  Dr. Harris also noted that the "patient has severe reactive airway disease and is not improving at all versus when he was seen several months ago.  He says that all of the medications he has been prescribed thus far are not helping including steroids, albuterol nebs[,] and singulair.  I have recommended that he see a pulmonologist but he has no job and no insurance and does not see how he can do that.  I have recommended UMC's charity system but he says that he went there and could not wait because his ride had to leave.  I have recommended that he return there when he can wait."  Dr. Harris diagnosed chronic obstructive asthma,

---

[20]      Rec. Doc. 14-1 at 218-219.

bronchitis, pneumonitis due to fumes and vapors, and extrinsic asthma.  He prescribed Ipratropium-Albuterol nebulizer solution, Spiriva with Handihaler, Hydrocortisone topical cream, Albuterol Sulfate pills, Prednisone tablets, and Albuterol Sulfate by inhalation.

On March 10, 2013, the claimant was taking Spiriva and a combination of Albuterol Sulfate and Ipratropium Bromide.[21]

On June 15, 2013, the claimant was examined by Dr. Jacques Courseault of Southern Medical Group, Inc. at the request of Disability Determination Services.[22] The claimant told Dr. Courseault that he had had reactive lung disease from welding since 2010; stated that he coughs and chokes when exposed to strong smells such as perfume, cologne, and house cleaning materials; and described his symptoms as worse in the morning.  He also told Dr. Courseault that he experiences shortness of breath when walking and with activity.  The claimant said that he was able to afford only one of his prescribed medications and that it provides minimal benefit.  He denied hearing loss and insomnia.  Dr. Courseault noted that the claimant coughed occasionally during the examination, including three to four times after taking a deep breath.  His examination showed no increase in the anteroposterior diameter of the

---

[21]      Rec. Doc. 14-1 at 214.

[22]      Rec. Doc. 14-1 at 251-255.

chest, no obvious chest wall deformity, no rales, no rhonchi, no wheezes, and no rubs. Respiratory excursions were full and symmetrical without the use of accessory muscles.  His chest x-ray was normal.  Dr. Courseault found that the claimant had a normal range of motion in all joints and no limitation on his ability to stand, sit, or ambulate.  Dr. Courseault opined that the claimant was capable of sitting, walking, and/or standing for a full workday, that he could lift and carry objects without limitation, that he could hold a conversation, respond appropriately to questions, remember instructions, and carry them out.  Despite occasional coughing throughout the examination and coughing when asked to take a deep breach, Dr. Courseault found no other abnormalities during his pulmonary examination.  He recommended that the claimant continue care with his primary care physician, and he also recommended a pulmonary function test.

On July 17, 2013, the claimant attempted a pulmonary function test but was unable to complete it.[23]

On March 17, 2014, the claimant presented at the emergency department of University Hospitals and Clinics in Lafayette, Louisiana, requesting a spirometer test and giving a history of reactive airway disease secondary to chemical exposure

---

[23]        Rec. Doc. 14-1 at 260, 262.

through welding.[24]  He also reported respiratory distress with chemical smells.  The claimant was evaluated by Dr. S. Sabatier, and he was scheduled to follow up in the medicine clinic on April 14, 2014.

On April 8, 2014, the claimant was seen for a new patient work-up with Dr. Debbie Vidrine at Southwest Louisiana Primary Health.[25]  He stated that he was out of his medications and explained that his respiratory problems worsen with smells, cleaning products, and smoke.  Dr. Vidrine noted that the claimant reacted to the Lysol spray in the examination room with a coughing episode.  The claimant denied any chest wall pain.  His oxygen saturation rate was 98%.  The doctor's assessments were allergic rhinitis, benign essential hypertension, asthma, and persistent insomnia. She prescribed a Spiriva inhaler, Albuterol Sulfate solution for use in a nebulizer, Claritin, Lisinopril for hypertension, and Vistaril for sleep.

On April 14, 2014,[26] the claimant attempted a pulmonary function test at University Hospital and Clinics but was unable to perform the test after three tries, stating that he was about to pass out, his head hurt, and he was coughing.  His pulse

---

[24]     Rec. Doc. 14-1 at 272-284.

[25]     Rec. Doc. 14-1 at 286-289.

[26]     Rec. Doc. 14-1 at 285.

ox saturation was 100%.  He declined the suggestion that he be examined in the hospital's emergency department.

On April 16, 2014, the claimant testified at the second hearing regarding his symptoms and his medical treatment.  At that time, he was taking Loratadine, Spiriva, and Albuterol for breathing problems, Lisinopril for hypertension, and Hydroxyzine Pam for sleep problems.[27]  He stated that he can bathe and dress himself but does not help with household chores because the cleaning chemicals affect his lungs.[28] Similarly, he stated that he does not do yard work because grass and pollen cause him to cough.[29]  He testified that he gets short of breath when carrying objects or doing physical activities and stated that both heat and cold cause him to choke and cough.[30] Sometimes he coughs until he vomits or bleeds.[31]

On April 29, 2014,[32] the claimant was seen at UHC Internal Medicine in Lafayette, Louisiana.  According to the claimant, he was scheduled to retry the

---

[27]     Rec. Doc. 14-1 at 245.

[28]     Rec. Doc. 14-1 at 31.

[29]     Rec. Doc. 14-1 at 32.

[30]     Rec. Doc. 14-1 at 40-41.

[31]     Rec. Doc. 14-1 at 36.

[32]     Rec. Doc. 14-1 at 294-298.

pulmonary function test on that date but no order for the test had been issued; therefore, the test was not performed.[33]

## ANALYSIS

### A.   STANDARD OF REVIEW

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[34] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[35] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[36]

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[37] In reviewing the Commissioner's findings, a court

---

[33]       Rec. Doc. 14-1 at 291.

[34]       *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[35]       *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

[36]       *Hames v. Heckler*, 707 F.2d at 164 (citations omitted).

[37]       42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173.

must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.[38]   Conflicts in the evidence[39] and credibility assessments[40] are for the Commissioner to resolve, not the courts.  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination:  (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[41]

## B.   ENTITLEMENT TO BENEFITS

The Disability Insurance Benefit ("DIB") program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[42]   Every individual who meets certain income and resource requirements, has filed an application for benefits, and

---

[38]   *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022.

[39]   *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

[40]   *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

[41]   *Wren v. Sullivan*, 925 F.2d at 126.

[42]   See 42 U.S.C. § 423(a).

-11-

is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits.[43]

A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[44]   A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[45]

## C.   EVALUATION PROCESS AND BURDEN OF PROOF

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled.  This process requires the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in

---

[43]      42 U.S.C. § 1382(a)(1) & (2).

[44]      42 U.S.C. § 1382c(a)(3)(A).

[45]      42 U.S.C. § 1382c(a)(3)(B).

-12-

or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work at step five.[46] "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis."[47]

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[48] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record.[49]   The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[50]

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[51]   This burden may be

---

[46]      20 C.F.R. § 404.1520.

[47]      *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

[48]      20 C.F.R. § 404.1520(a)(4).

[49]      20 C.F.R. § 404.1545(a)(1).

[50]      20 C.F.R. § 404.1520(e).

[51]      *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[52]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[53]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[54]

## D.     THE ALJ'S FINDINGS AND CONCLUSIONS

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since September 21, 2012.[55]  This finding is supported by substantial evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments:  chronic obstructive pulmonary disease/emphysema.[56]  This finding is supported by substantial evidence in the record.

---

[52]     *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[53]     *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302.

[54]     *Greenspan v. Shalala*, 38 F.3d at 236.

[55]     Rec. Doc. 14-1 at 17.

[56]     Rec. Doc. 14-1 at 17.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meet or medically equal the severity of a listed impairment.[57]  The claimant does not challenge this finding.

The ALJ found that the claimant has the residual functional capacity to perform light work except for the following except that he must avoid extreme exposure to pulmonary irritants, specifically including dust, fumes, gases, poor ventilation, and temperature extremes.[58]  The claimant challenges this finding.

At step four, the ALJ found that the claimant is not capable of performing his past relevant work as a sandblaster, welder, and truck loader.[59]  The claimant does not challenge this finding.

At step five, the ALJ used the Medical-Vocational Rules as a framework and found that the claimant was not disabled from September 21, 2012 (the disability onset date assigned in his application for benefits) through August 27, 2014 (the date of the decision) because there are jobs in the national economy that he can perform.[60] The claimant challenges this finding.

---

[57]     Rec. Doc. 14-1 at 18.

[58]     Rec. Doc. 14-1 at 18.

[59]     Rec. Doc. 14-1 at 20.

[60]     Rec. Doc. 14-1 at 21.

### E.    THE ALLEGATIONS OF ERROR

The claimant contends that the ALJ erred (1) in failing to consider all relevant evidence; (2) in failing to properly evaluate the claimant's residual functional capacity; (3) and in basing his decision on the claimant's failure to seek treatment.

### F.    DID THE ALJ ERR IN FAILING TO CONSIDER ALL RELEVANT EVIDENCE?

At step two of the requisite analysis, the ALJ found that the claimant's COPD/emphysema is a severe impairment.  At step three, the ALJ found that these impairments do not meet or equal the criteria for a listed impairment, specifically Listing 3.03, which is the listing for asthma.  The claimant contends that this was error because the ALJ reached this determination without considering the fact that the claimant was also diagnosed with restrictive lung disease and reactive airway disease.

This Court finds that the claimant may be making a distinction without a difference.  He is pointing out that he has been diagnosed with two additional conditions:  restrictive lung disease and reactive airway disease.  "Reactive airway disease is a group of conditions that include reversible airway narrowing due to an external stimulation.  These conditions generally result in wheezing.  Conditions within this group include asthma, chronic obstructive pulmonary disease, and viral upper respiratory infections.  The term sometimes is misused as a synonym for asthma.  Current medical use of the term reactive airway disease is used in pediatrics

to describe an asthma-like syndrome in infants, that may later be confirmed to be asthmatics when they become old enough to participate in diagnostic tests such as the bronchial challenge test."[61]   The term "reactive airways dysfunction syndrome" is sometimes preferred when referring to the "condition produced by inhalational injury from gas, vapors, or fumes.   The symptoms mimic asthma, but appear unresponsive to asthma treatments."[62]   Thus, COPD is certainly included within a restrictive airway diagnosis and asthma may or may not be.   On the other hand, the term "restrictive lung disease" refers to a "group of conditions characterized by a restrictive pattern on spirometry and confirmed by a reduction in total lung volume."[63]   With regard to the claimant's argument that his diagnosis with these conditions should have been given greater consideration by the ALJ, it is well-settled that a diagnosis alone cannot support a finding of disability.   As the Fifth Circuit noted, "[t]he suffering of some impairment does not establish disability; a claimant is disabled only if she is 'incapable of engaging in any substantial gainful activity.'"[64]   The claimant did not

---

[61]      Restrictive Airway Disease, https://en.wikipedia.org/wiki/Reactive_airway_disease (last visited Feb. 17, 2017).

[62]      Successful treatment of reactive airways dysfunction syndrome by high-dose Vitamin D, https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3196486 (last visited Feb. 17, 2017).

[63]      Respiratory Conditions Update:   Restrictive Lung Disease, https://www.ncbi.nlm. nih.gov/pubmed/27576233 (last visited Feb. 17, 2017).

[64]      *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992) (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

-17-

explain how restrictive lung disease and reactive airway disease negatively impact his functionality more than COPD and/or emphysema do.  Similarly, the record lacks the objective medical test results necessary to support a finding that his respiratory conditions meet or equal the criteria of a listed impairment.  The claimant has the burden of proof at steps two and three of the analysis, but in this case, the claimant failed to prove that he has a severe condition other than those identified by the ALJ or that he has a condition that meets or equals the criteria of a listed condition.  The ALJ expressly stated that he considered all of the claimant's impairments, and he identified the listing that he analyzed in reaching his conclusions.  The ALJ also noted in his decision that the claimant has a history of reactive lung disease. Therefore, the claimant's argument that the ALJ's decision failed to consider all relevant evidence lacks merit.

## G.   DID THE ALJ ERR IN FAILING TO PROPERLY EVALUATE THE CLAIMANT'S RESIDUAL FUNCTIONAL CAPACITY?

The ALJ found that the claimant retains the ability to perform light work except that he must avoid exposure to pulmonary irritants and temperature extremes.  The claimant contends that the ALJ reached this conclusion by erroneously failing to properly evaluate his residual functional capacity.  More particularly, the claimant alleges that the ALJ failed to include a narrative discussion pointing to evidence that

supports the ALJ's conclusions concerning the claimant's ability to perform exertional functions necessary for light work.

A person's residual functional capacity is the most he can do despite his limitations or restrictions.[65]  The responsibility for determining a claimant's residual functional capacity is reserved to the Commissioner.[66]  In making that determination, the ALJ is required to evaluate the claimant's functional limitations, explain how the evidence supports his conclusions about those limitations, and discuss the claimant's ability to perform sustained work activities on a regular and continuing basis.[67]  In this case, the ALJ's ruling includes a detailed analysis of the claimant's residual functional capacity with citations to the record evidence supporting his conclusions in that regard.  While the claimant argues that SSR 96-8p requires an ALJ to provide a function-by-function discussion of a claimant's abilities, there is jurisprudence noting that the regulation does not require an ALJ to discuss all of a claimant's abilities on a function-by-function basis.[68]  Even if that were the case, however, "[p]rocedural perfection in administrative proceedings is not required" as long as "the

---

[65]    SSR 96-8p, 1996 WL 374184, at *1.

[66]    *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

[67]    SSR 96-8p, 1996 WL 374184, at *1.

[68]    See, e.g., *Washington v. Social Security Administration*, No. 15-2272, 2016 WL 4735130, at *8 (E.D. La. Sept. 2, 2016).

-19-

substantial rights of a party have not been affected."[69]   In this case, the claimant

cannot establish that he was prejudiced by the ALJ's failure to include a function-by-

function narrative of his ability to do light work.

To be considered capable of performing light work, a person must be able to

lift twenty pounds at a time, to frequently lift or carry objects weighing up to ten

pounds, to walk or stand a good deal, or if sitting most of the time, to push and pull

arm or leg controls.[70]   In this case, although the claimant contends that the ALJ failed

to comply with SSR 96-8p, he cites nothing in the record to explain how the ALJ's

conclusions were deficient, nor does he point to any specific evidence that the ALJ

did not consider.   Indeed, he cannot do so.   The only evidence regarding the

claimant's ability to sit, stand, walk, lift, and carry in accordance with the

requirements for light work is found in Dr. Courseault's report.   There, Dr. Courseault

opined, after obtaining a detailed history from the claimant and examining him, that

the claimant "should be able to sit, walk, and/or stand for a full workday, [and]

lift/carry objects without limitations."[71]   The record contains no opinion from any

other physician who actually examined or treated the claimant restricting the

---

[69]     *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988 ).

[70]     20 C.F.R. § 416.967.

[71]     Rec. Doc. 14-1 at 254.

claimant's ability to perform any of these tasks in the work place.  The only restriction that the claimant noted was his inability to come into contact with chemicals such as perfume, cologne, and hair spray, and the ALJ took that into account when he found that the claimant should avoid exposure to pulmonary irritants.  For these reasons, this Court finds that this assignment of error lacks merit.

**H.    DID THE ALJ ERR IN BASING HIS DECISION ON THE CLAIMANT'S FAILURE TO SEEK TREATMENT?**

The claimant argues that his lack of financial means makes it difficult for him to obtain treatment for his respiratory condition.  He also argues that his reactive airway disease, which causes him to cough when exposed to chemicals or smells, also restricts his ability to obtain medical treatment.  He argued that he needs to be seen in a controlled environment; therefore, he further argued that the only way he can see a doctor regularly would be for the doctor to see him privately in a controlled setting. The claimant also took issue with the ALJ's statement that the claimant refused to take a pulmonary function test, arguing that he is willing to perform the test but physically unable to complete it because of his impairments.  Implicitly, the claimant contends that the difficulties he encounters in seeking treatment should not be held against him in evaluating whether he is disabled.

The record indicates that the claimant did seek some services at University Hospitals and Clinics in Lafayette, Louisiana, which indicates that the claimant is aware of and has access to no-cost or reduced-cost medical providers in the area.

On one occasion, the claimant was seen by Dr. Harris on the front porch of the doctor's office building after the claimant coughed due to cleaning agents used inside the building.  Thus, the record establishes that the claimant was able to obtain medical services in an atypical yet protected environment.

In his decision, the ALJ noted that the record contains a marked lack of objective medical evidence and stated that "[a]bsent medically acceptable clinical, diagnostic, and laboratory findings, the undersigned concludes that the claimant's testimony regarding the extent of disability is not fully supported by the medical record."[72]  This Court agrees.  "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."[73]   In other words,  a claimant's "subjective complaints must be corroborated at least in part by objective medical testimony."[74]

---

[72]      Rec. Doc. 14-1 at 20.

[73]      20 C.F.R. § 404.1508

[74]      *Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989).

In this case, the record documents only four visits with treating physicians, plus appointments made for the specific purpose of obtaining pulmonary function tests. The ALJ noted this in his decision, stating that "the claimant visited his primary care provider only four times for his symptoms with no hospitalization required.  His treatment was not of the severity expected for the levels of pain and restriction alleged by the claimant."[75]  Dr. Harris and the consulting examiner recommended that the claimant see a pulmonologist, but the record does not indicate that the claimant ever did so.  Thus, the record indicates that the claimant was noncompliant with the recommendations of the doctors that he saw.  The claimant has the burden of producing medical evidence that the ALJ can use to reach a conclusion about his impairments and their effect on his ability to work.[76]  When the medical evidence is sparse, an ALJ may rely on a lack of treatment as an indication of nondisability.[77]  In this case, the ALJ did not err in finding that the claimant's lack of medical treatment is inconsistent with the level of functional impairment that he claims.  In summary, the claimant failed to satisfy his burden of providing sufficient medical evidence supporting his alleged impairments.  Therefore, this assignment of error lacks merit.

---

[75]     Rec. Doc. 14-1 at 19.

[76]     *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989).

[77]     *Villa v. Sullivan*, 895 F.2d at 1024.

-23-

<u>**CONCLUSION AND RECOMMENDATION**</u>

This Court finds (a) that the Commissioner's conclusions were reached after proper legal standards were used in evaluating the evidence, and (b) that the Commissioner's conclusions are supported by substantial evidence in the record. Accordingly,

**IT IS THE RECOMMENDATION** of this Court that the decision of the Commissioner be **AFFIRMED** and this matter be dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual

findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[78]

      Signed in Lafayette, Louisiana, this 21st day of February 2017.

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[78]    See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).